UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| C.M., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:25-cv-00198-TWP-KMB |
| ) | |
| SCOTT A. MAPLES, JR., ) | |
| SAMUEL OLSON, ) | |
| KRISTI NOEM, ) | |
| PAMELA J. BONDI, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS,
GRANTING MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM,
AND DIRECTING IMMEDIATE RELEASE**

This matter is before the Court on a Verified Petition for a Writ of Habeas Corpus filed by Petitioner C.M. (Dkt. 1). Also pending is Petitioner's Motion for Leave to Proceed Under Pseudonym. (Dkt. 5). C.M. is a citizen of Honduras who has been subject to a final order of removal since 2016. The government did not remove her or detain her; instead she was released subject to an order of supervision. Nine years later, Immigration and Customs Enforcement ("ICE") agents arrested C.M. during a routine check-in immigration appointment in Indianapolis, Indiana. Since then, she has been detained in the Clark County Jail. C.M. seeks immediate release from detention based on Respondents Scott A. Maples, Jr., Samuel Olson, Kristi Noem, and Pamela J Bondi's (collectively, "Respondents") failure to abide by their own processes. For the reasons described below, C.M.'s Petition and her request to proceed under pseudonym are **granted**.

## I.  BACKGROUND

C.M., a female noncitizen, entered the United States in 2006, fleeing gender-based violence in Honduras. (Dkt. 1 ¶ 21). In 2009, C.M. voluntarily departed the United States after attempting

1

to turn herself into ICE custody. *Id.* ¶ 22. After continuing to experience violence in Honduras, she once again fled and entered the United States in October 2016. *Id.* ¶ 23. C.M. immediately requested protection due to her fear of violence upon return to Honduras, and Department of Homeland Security ("DHS") officials detained her. *Id.*

While in DHS custody, an asylum officer from U.S. Citizenship and Immigration Services conducted a reasonable fear interview and found that C.M. possessed a reasonable fear of torture if she returned to Honduras. *Id.* ¶ 24. C.M. contends that upon making this determination, DHS must initiate proceedings before the Immigration Court, commonly known as "withholding only" proceedings, to allow the noncitizen to pursue an order barring her return to the country from which she is fleeing. *Id.* (citing 8 C.F.R. § 1208.31(e)). DHS did not initiate these proceedings in 2016 and has yet to do so. *Id.*

On November 21, 2016, ICE determined that C.M. was not a flight risk or a danger to the community and released her on an Order of Supervision ("OSUP"). *Id.* ¶ 25. Since then, C.M. has fully complied with her OSUP by making regular telephone check-ins and appearing for in-person ICE check-ins. *Id.*; (Dkt. 1-1). There is no contention that C.M. violated any of the conditions of her supervision in the roughly nine years it was in place. (Dkt. 1 ¶¶ 24–26). In fact, in March of 2025, Citizenship and Immigration Services found that C.M. was in compliance with her OSUP and approved her employment authorization application. *Id.* ¶ 26; (Dkt. 1-2).

On August 20, 2025, an ICE agent arrested C.M. while she attended one of her routine ICE check-ins. (Dkt. 1 ¶ 27). The agent initially told C.M. and her attorney that ICE was reinstating an order of removal. *Id.* ¶ 28; (Dkt. 1-3 ¶ 9 (Middlesworth Decl.)). When C.M.'s attorney informed the ICE agent that DHS had already reinstated the order of removal in 2016 and that C.M. was awaiting the docketing of "withholding only" proceedings, the ICE agent said he was "'detaining

2

her anyway.'" (Dkt. 1 ¶ 28; Dkt. 1-3 ¶ 9). C.M. was not provided any advance notice that she would be taken into custody or any written documentation of the reasons for her arrest. (Dkt. 1 ¶ 29; Dkt. 1-3 ¶ 10). Though the arresting ICE agent initiated a standard arrest interview with C.M., he did not note that C.M. was on an OSUP or indicate any reason for revoking her OSUP. (Dkt. 17-6). The interview was cut short because C.M. did not want to continue without her lawyer present. *Id*. Since her arrest, C.M. has not received a notice of revocation of her OSUP or an informal interview where she could respond to the basis for the revocation. (Dkt. 1 ¶ 31).

## II.   LEGAL STANDARD

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Three sources of law govern C.M.'s petition.

First, the Attorney General must detain an alien who has been ordered removed for 90 days. 8 U.S.C. § 1231(a)(1). "If the alien does not leave or is not removed within the [90-day] removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). Noncitizens who have been ordered removed for certain reasons may be released, subject to supervision, at the Attorney General's discretion. 8 U.S.C. § 1231(a)(6). Federal regulations specify that ICE may only release individuals and place them on an OSUP if they "demonstrate[ ] to the satisfaction of the Attorney General . . . that his or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such alien's removal." 8 C.F.R. § 241.4(d); *see also id*. § 241.4(e)(6).

Second, the regulations referenced in § 1231(a) prescribe procedures for revoking an order of supervision and returning a removable noncitizen to custody. If the noncitizen "violates the

3

conditions of release," she "will be notified of the reasons for revocation" of release, returned to custody, and "afforded an initial informal interview promptly after" return to custody so she may have "an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1).

Alternatively, designated officials have discretionary authority to revoke orders of supervision. 8 C.F.R. § 241.4(l)(2). The revoking official must determine that:

i. The purposes of release have been served;

ii. The alien violate[d] any condition of release;

iii. It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

iv. The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

*Id.* Section 241.4(l)(3) provides for additional reviews to take place following re-detention.

Third, the Administrative Procedure Act requires federal courts to "hold unlawful and set aside agency action" that is:

A. arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

B. contrary to constitutional right, power, privilege, or immunity; [or]

C. in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

5 U.S.C. § 706(2). "[C]ourts have consistently demanded governmental compliance with administrative regulations designed to safeguard individual interests." *Martinez Camargo v. I.N.S.*, 282 F.3d 487, 491 (7th Cir. 2002); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954) ("We think the petition for habeas corpus charges the Attorney General with precisely what the regulations forbid him to do: dictating the Board's decision. . . . [W]e object to the Board's alleged failure to exercise its own discretion, contrary to existing valid regulations.").

ICE is "required to follow [its] own regulations . . . including those that govern exercises of an agency's discretion." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021); *see also K.E.O. v. Woosley*, No. 25-cv-74, 2025 WL 2553394, at *3 (W.D. Ky. Sept. 4, 2025) ("Based upon the record provided, no reasons were provided by ICE and no informal interview promptly occurred. . . . ICE's failure to follow their own regulations violate the *Accardi* doctrine and K.E.O.'s procedural due process rights."); *N.A.L.R. v. Bondi*, No. 25-cv-192, 2025 WL 2987239, at *3 (S.D. Ind. Oct. 23, 2025) (same).

### III.   ANALYSIS

There is no dispute that C.M. is removable and her detention is authorized by 8 U.S.C. § 1231(a). The 90-day removal period expired years ago, so C.M. is eligible for release subject to an OSUP. Indeed, in 2016, she *was* released subject to an OSUP and complied with it for nine years, even receiving work authorization.

C.M. contends that her current confinement is unlawful because the government did not abide by its own processes for revoking her release. Lacking any evidence that she violated any condition of release, the government could not lawfully revoke her release under 8 C.F.R. § 241.4(l)(1). Importantly, there is no evidence that either the Executive Associate Commissioner or a District Director revoked C.M.'s release as required by § 241.4(l)(2)—much less that they undertook the necessary considerations or based the decision on the required findings. *See* (Dkt. 1 ¶¶ 27–33). In response, Respondents put forth three arguments, none of which fully addresses C.M.'s challenge to the revocation of her OSUP.[1]

---

[1] The Court does not address Respondents' indefinite detention argument because it does not respond to anything in the petition.

A.  **Jurisdiction**

Respondents argue that 8 U.S.C. § 1252(g) precludes judicial review of C.M.'s Petition. (Dkt. 17 at 14). They rely on Section 1252(g), which states that "no court shall have jurisdiction to hear any cause or claim by . . . any alien arising from the decision or action by [ICE] to . . . execute removal orders against any alien." Respondents' argument fails.

Respondents improperly construe C.M.'s requested relief as "a stay from removal," and then cite caselaw showing that § 1252(g) does indeed preclude district courts from reviewing decisions to execute removal orders. (Dkt. 17 at 14). As C.M. points out, however, this misconstrues her petition. (Dkt. 23 at 11). C.M. challenges her detention without due process of law, not her removal proceedings or an ultimate order of removal. The word "stay" never appears in her petition. The Seventh Circuit has previously held that "nothing in § 1252(g) precludes review of the decision to confine." *Carrera-Valdez v. Perryman*, 211 F.3d 1046, 1047 (7th Cir. 2000). This is because § 1252(g) only bars a district court's judicial review of "the three listed decisions or actions." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021) ("[Section 1252(g)] does not sweep broadly; only challenges to the three listed decisions or actions—to commence proceedings, adjudicate cases, or execute removal orders—are insulated from judicial review." (citing *Reno v. American-Arab Anti–Discrimination Comm. (AAADC)*, 525 U.S. 471, 482 (1999))); *Dep't of Homeland Sec. v. Regents of the Univ. of California,* 591 U.S. 1, 19 (2020) (rejecting as "'implausible'" any claim that § 1252(g) covers "all claims arising from deportation proceedings." (quoting *AAADC*, 525 U.S. at 482)); *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) ("Parra, by contrast, did not ask the district court to block a decision 'to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.' His claim concerns detention

6

while the administrative process lasts, and it may be resolved without affecting pending proceedings. Section 1252(g) therefore does not foreclose review.").

Furthermore, Respondents *claim* that C.M. was arrested to immediately execute a removal order. (Dkt. 17 at 1). As C.M. points out, however, this claim is unsupported by evidence in the record. Indeed, it is undisputed that C.M. cannot be removed to Honduras until an Immigration Judge reviews and adjudicates her claim for protection. In sum, this Court has jurisdiction over C.M.'s petition to the extent that it challenges her detention.

**B.    Compliance and Discretion**

Second, Respondents argue that they did comply with the regulatory requirements. Respondents concede that ICE did not revoke C.M.'s OSUP pursuant to 8 C.F.R. § 241.4(l)(1). *See* (Dkt. 17 at 6–7). They assert that ICE complied with § 241.4(l)(2) because ICE used its discretion to determine that the "purposes of release have been served" and "it is appropriate to enforce a removal order." *Id.* Respondents contend that ICE has "significant discretion . . . to revoke release," presumably to "facilitate Petitioner's removal." (Dkt. 17 at 6). Respondents, however, do not provide any evidence suggesting that ICE complied with § 241.4(l)(2). Indeed, Respondents later concede "[i]t is evident here, that like Petitioner in *N.A.L.R.*, C.M.'s OSUP was not revoked by an official with authority according to the prescribed legal process in 8 C.F.R. § 241.4(l)." (Dkt. 17 at 10). As C.M. points out, even notwithstanding the non-compliance with the regulations, Respondents' justification for C.M.'s revocation is a post hoc rationalization that violates the *Chenery* doctrine. (Dkt. 23 at 6); *Mengistu v. Ashcroft*, 355 F.3d 1044, 1046–47 (7th Cir. 2004) (explaining that the *Chenery* doctrine forbids the "lawyers for an administrative agency to defend the agency's decision on a ground different from that stated or at least discernible in the decision itself."). In addition, as stated above, Respondents' claim that ICE revoked C.M.'s OSUP to

7

effectuate her removal belies the facts, since ICE cannot remove her until DHS refers her case to an Immigration Judge. (Dkt. 1-4; Dkt. 17 at 2); *see also* 8 C.F.R. § 208.31(e).

Respondents next argue that ICE does not have to provide advanced notice of its intent to revoke release. (Dkt. 17 at 8). But this statement flies in the face of ICE's own regulations. Courts have held that revocations under both 8 C.F.R. §§ 241.4(l)(1) and (l)(2) require notice upon revocation and a prompt interview. *See, e.g.*, *K.E.O.*, 2025 WL 2553394, at *5 (stating that Section 241.4(l) requires that, "upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release or parole . . . [and] be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification" (citation modified)); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 164–65 (W.D.N.Y. 2025) (explaining that courts have interpreted § 241.4(l) as requiring an informal interview upon the revocation of release); *Orellana v. Baker*, No. 25-1788, 2025 WL 2444087, at *5 (D. Md. Aug. 25, 2025) (explaining that the regulations in 8 C.F.R. § 241.4 "plainly provide due process protections to aliens following the removal period as they are considered for continued detention, release, and then possible revocation of release by, among other things, . . . requiring certain procedural safeguards upon revocation to allow a noncitizen to have an opportunity to be heard to contest the reasons for revocation, including informal interviews and custody reviews."). Furthermore, Respondents' position contradicts its acknowledgment that the "'revocation regulation 'provides the detainee some opportunity to respond to the reasons for revocation.'" (Dkt. 17 at 6 (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1117 (9th Cir. 2010))). Respondents also acknowledge that "[w]hen ICE revokes release of an individual under 8 C.F.R. § 241.4(l), ICE must conduct an 'informal interview' to advise the individual of the basis for revocation and must also serve the individual with a written notice of revocation." (Dkt. 17 at 6).

8

Last, Respondents argue that ICE attempted to interview C.M. when she was arrested on August 20, 2025, but she refused. (Dkt. 17 at 8). However, as C.M. points out, she did not refuse—she requested to have her counsel present. Furthermore, Respondents do not provide evidence that the officer gave reasons for the revocation of C.M.'s OSUP during the truncated interview. Respondents attach the Form I-213 as evidence of an interview, but this is a standard DHS form used by an immigration officer following an arrest; it is not used for a post-OSUP revocation interview. (Dkt. 17 at 8); *see, e.g.*, *Rosendo-Ramirez v. I.N.S.*, 32 F.3d 1085, 1087 (7th Cir. 1994) ("The [Form] I–213 (Record of Deportable Alien) . . . prepared by Agent Robinson after the initial encounter with Rosendo, purports to record Rosendo's statements during the interrogation."); *Sphabmixay v. Noem, et al.*, No. 25CV2648, 2025 WL 3034071, at *2 (S.D. Cal. Oct. 30, 2025) (holding that the Form I-213 "does not contain reasons for the revocation of Petitioner's release, so it does not satisfy the 'the [*sic*] due-process notification requirement.'").

In sum, C.M. has made a showing that she was released subject to an OSUP and that her release was not revoked by an official with authority or according to the process the law prescribes. Respondents have not shown otherwise.

**C.      Proper Remedy**

Finally, Respondents argue that the proper remedy for addressing C.M.'s petition is to order additional process, rather than outright release. (Dkt. 17 at 11). They cite two recent decisions from the Southern District of Indiana where this Court granted such relief as opposed to granting immediate release. (Dkts. 19, 22); *see Cedeno-Gonzalez v. Noem*, No. 2:25-cv-473-JPH-MJD, 2025 WL 2999583, at *1 (S.D. Ind. Oct. 27, 2025) (ordering respondents to show cause why the petition should not be granted for failure to afford the petitioner an informal interview with the

9

opportunity to respond to the reasons for revocation); *Doe v. Bondi, et al.*, No. 2:25-cv-000480-MPB-MJD.

C.M. replies that her petition is more in line with *N.A.L.R. v. Bondi*, wherein the court ordered immediate release after the government failed to show that it complied with its regulations in revoking the petitioner's OSUP. *See also* (Dkt. 27 at 4 (citing *Sphabmixay,* 2025 WL 3034071, at \*3)). C.M. is correct. In *Cedeno-Gonzalez*, Judge Hanlon reasoned that additional process was warranted after "ICE provided Mr. Cedeno-Gonzalez with a notice informing him that his order of supervision had been revoked due to 'changed circumstances,'" and that ICE determined that the petitioner could be removed to Mexico. 2025 WL 2999583, at \* 3. In *Doe v. Bondi*, the Court did not initially grant immediate release, but did so after respondents failed to document that an official expressly authorized under 8 C.F.R. § 241.4(l)(1) or (2) had revoked the petitioner's release according to the process contained in that regulation. *See* (Dkt. 33 in No. 2:25-cv-000480-MPB-MJD). The instant matter, on the other hand, is similar to *N.A.L.R. v. Bondi*, where the petitioner demonstrated that following her initial arrest and release subject to an OSUP, her release was never revoked by any official with authority to do so or according to the prescribed legal process. 2025 WL 2987239, at \*3. Where, as here, revocation of the petitioner's release and her current detention violate the APA and *Accardi* doctrine, both must be rescinded and set aside. *Id.* at \*3 n.2 (collecting cases demonstrating that district courts around the country have ordered immediate release of noncitizens being detained without compliance with 8 C.F.R. § 241.4(l)).

### IV.     CONCLUSION

For the reasons explained in this Order, C.M.'s Petition for Writ of Habeas Corpus, Dkt. [1], is **GRANTED**, and C.M. is **ordered** released forthwith from custody subject to her most recent order (and conditions) of supervision. Respondents are allowed until **November 10, 2025**,

to certify to the Court that C.M. has been so released from detention. **Final Judgment** shall enter in a separate order.

    C.M.'s unopposed Motion to Proceed Under a Pseudonym, Dkt. [5], is **granted**. [2]

**IT IS SO ORDERED.**

Date: 11/5/2025

                                                   Hon. Tanya Walton Pratt, Judge
                                                   United States District Court
                                                   Southern District of Indiana

Distribution:

Jess Hunter-Bowman
NATIONAL IMMIGRANT JUSTICE CENTER
jbowman@immigrantjustice.org

Lisa Koop
National Immigrant Justice Center
lkoop@immigrantjustice.org

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com

Jeffrey D. Preston
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jeffrey.preston@usdoj.gov

---

[2] Federal courts maintain a "strong presumption that adult litigants must use their own names." *Doe v. K.J.*, No. 25-1046, 2025 WL 2755815, at *1 (7th Cir. Sept. 29, 2025). However, the Seventh Circuit has permitted litigants to proceed pseudonymously to limit exposure to retaliatory violence and "to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses." *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997); *see also P.A.-V. v. Bondi*, 148 F.4th 511, 515 (7th Cir. 2025) (granting motion to proceed under pseudonym "out of an abundance of caution" because movant's "fear of retaliatory acts of violence . . . renders anonymous litigation prudent" and "the potential harm from disclosure outweighs any potential harm of concealing P.A.-V.'s full name"); *E.F.L.*, 986 F.3d at 961 ("Because of E.F.L.'s allegations of domestic abuse and her fear of retaliation, this court granted her motion to use a pseudonym while pursuing this appeal."). C.M.'s unopposed representations that she is a victim of gender-based violence whose identification would expose her and her minor children to a risk of further abuse justify application of the exception in this case.